NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE EDGAR, On Behalf of Herself and All Others Similarly Situated | Hon. Stanley R. Chesler |
| Plaintiffs, | Civil Action No. 05-3598 (SRC) |
| v. | |
| AVAYA, INC., et al. | **OPINION** |
| Defendants | |

**CHESLER, District Judge**

      **THIS MATTER** comes before the Court on a Motion to Dismiss Plaintiff's Complaint (docket #9) brought by Defendants Avaya Inc. (the "Company"), Garry McGuire, Sr. ("McGuire"), Donald K. Peterson ("Peterson"), Joseph P. Landy ("Landy"), Richard F. Wallman ("Wallman"), and Bruce Lasko ("Lasko") (collectively, "Defendants"). The Court, having considered the papers submitted by the parties, for the reasons set forth below, and for good cause shown, **GRANTS** the Defendants' Motion.

## I.  BACKGROUND OF THE CASE[1]

      The Defendant, Avaya Inc., builds, designs, and manages communications networks for

---

[1] Unless otherwise noted, the recitation of the facts in this case are drawn from the allegations contained in the Plaintiff's Complaint.

1

businesses worldwide.  Avaya was created in October 2000, when the company was spun-off from Lucent Technologies and began trading as a separate and independent corporation.  (Def. Br. at 3.)  Avaya maintained three separate employee pension benefit plans within the meaning of 29 U.S.C. § 1002(2)(A).  The three plans were the Avaya Inc. Savings Plan (the "Union Plan"), the Avaya, Inc. Savings Plan for the Variable Workforce (the "Variable Plan") and the Avaya, Inc. Savings Plan for Salaried Employees (the "Management Plan") (collectively the "Plans").  Avaya was the sponsor and plan administrator for each of the Plans.  (See Def. Br., Ex. 3 at 49 (Union Plan Summary Plan Description ("SPD")); Id., Ex. 4 at 37 (Variable Plan SPD); Id., Ex. 5 at 46 (Management Plan SPD).)

Participants in each of the Plans may, at their option, contribute a portion of their pay, subject to certain limitations, into the Plans for investment.  The Company also provides matching contributions to Participants' accounts in the Union and Management Plans, which is also subject to certain limitations.[2]  Each of the three Plans offered a variety of investment options from which the Participants could choose to direct all or part of their Plan contributions, and the Company matching contributions made on their behalf as well.  The Plans each offered twenty-three different investment options to Participants, as selected by the Company.  These options included a variety of mutual funds, bond funds, and asset allocation funds.  Each of the three Plans also included the option for Participants to invest in the Avaya Stock Fund (the

---

[2] For the Union Plan, the Company matched 66 2/3 cents for every dollar a Participant contributed, up to the first 6% of the Participant's eligible compensation.  With the Management Plan, the Company contributed 2% of the Participant's eligible compensation each payroll period, regardless of the Participant's contribution to the Plans.  The Company also matched 100% of the Participant's Plan contributions up to the first 2% of eligible compensation, and 50% of the contributions up to the next 4% of eligible compensation.

"Fund").  The Fund invested primarily in shares of Avaya common stock, with a small portion of

the Fund's assets retained in cash or other liquid investments to allow the Fund to buy or sell

stock at the direction of the Participants. Funds from all three Plans are maintained in a Master

Trust.  According to the June 22, 2005 Form 11-K filed by the Company, the Master Trust was

valued at approximately $1.4 billion as of December 31, 2004.  Of this, approximately 16% of

the Master Trust's funds were invested in Avaya common stock.

On April 19, 2005, the Company publicly announced, in their quarterly earnings

announcement, that their performance for the preceding quarter was "not up to our expectations."

(Compl. at 14, ¶ 47.)  The Company also announced that their revenues for the quarter increased

21 percent compared to the previous years but, accounting for the addition of revenues from

recent acquisitions, the Company's product and services revenues declined year-over-year

overall.  While the Company expected their performance in the second half of the year to

improve, they believed that the Company would "not meet its previously stated goals for growing

revenues, operating income and operating margin in fiscal 2005."  (Compl. at 21, ¶ 55.)  The next

trading day, April 20, 2005, the Company stock fell over twenty five percent on heavy trading.

The Plaintiff, Jane Edgar ("Edgar"), is a former employee of Avaya Inc. and remains a

current participant in Avaya's Union Plan.  (Def. Br., Ex. B., ¶ 3 (Lasko statement).)  As part of

her investment portfolio with the Union Plan, Edgar had a portion of her Plan investments

invested in the Avaya Stock Fund.  (Id.)  At no time did Edgar ever participate in either the

Management Plan or the Variable Plan, and she never held investments in Avaya common stock

under either of these Plans.  (Id.)  The Plaintiff filed the current suit, on behalf of a class of

similarly situated individuals who were participants or beneficiaries of any of the three Plans at

3

any time from October 5, 2004 to the present (the "Class Period").

The Plaintiff claims that prior forecasts and statements made by the Company before the April 2005 announcement regarding revenue growth and the recent acquisition of Tenovis, a European provider of communications systems and services, were, in light of the April 2005 announcement, "materially false and misleading."  (Compl. at 22, ¶ 58.)  The Plaintiff claims that she, and other members of the Class, purchased and retained Avaya stock as part of their Plan investments, "relying on the integrity of the market price of Avaya's common stock and information relating to Avaya furnished by the Defendants, and have been damaged thereby." (Id.)  The Plaintiff alleges that the Defendants "materially misled the investing public, thereby inflating the price of Avaya's common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make [D]efendants' statements . . . not false and misleading."  (Id. at 23, ¶ 59.)  This, it is claimed, resulted in the Plaintiff, and other Class members, purchasing and holding Avaya stock as part of their Plan investments at "artificially inflated prices."  (Id. at ¶ 61.)

The Plaintiff is claiming that the Defendants violated their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*  The Plaintiff is bringing suit against various Defendants, including the Company and various individuals who held positions with Avaya during the Class Period.  These individual defendants include McGuire, who served as Avaya's Chief Financial Officer, Peterson, who served as Chairman of the Board and Chief Executive Officer of Avaya, Landy and Wallman, who both served as a Directors of the Company and served as members of Avaya's Compensation and Finance Committees, and Lasko, who signed Avaya's Form 11-Ks which were filed with the

SEC on June 22, 2005 as the Plan Administrator.  The Plaintiff is also bringing suit against unnamed members of the Plan's Employee Benefits Committee.

The Plaintiff is claiming that the Defendants breached their fiduciary duties owed to them by:

- **Count I** - "failing to act prudently and failing to use reasonable care, skill, or diligence in offering Avaya stock as an investment option, purchasing Avaya stock for the Plans, monitoring the Plans' investment in Avaya stock, and communicating information concerning Avaya's financial performance to participants and beneficiaries of the Plans."  (Compl. at 32, ¶ 80.)  Because the Defendants knew, or should have known, that Avaya stock was an imprudent investment, the Plaintiff is claiming that they breached their fiduciary duties to Plan Participants by not giving Participants notice of the Company's financial performance and/or divesting the Plan assets from Avaya stock prior to the Company's April 2005 earnings announcement.

- **Count II** - "failing to provide complete and accurate information regarding Avaya stock, Avaya's business improprieties, public misrepresentations, inflated earnings and growth estimates, and the consequent artificial inflation of the value of Avaya stock . . . [as well as failing] to convey accurate information regarding the soundness of Avaya stock and the prudence of investing retirement contributions in Avaya equity."  (Compl. at 35, ¶ 97.)

- **Count III** - failing to ensure that monitored fiduciaries had "access to knowledge about the Company's true financial performance and growth prospects" and

"failing to ensure that the monitored fiduciaries appreciated the huge risk inherent in the significant investment" of Plan assets in Avaya stock and allowing these monitored fiduciaries to continue offering Avaya stock as an investment option and retain the Plans' investments in the Company's stock when "it [was] no longer prudent to do so." (Compl. at 39, ¶ 109.)

- **Count IV** - co-fiduciary liability under 29 U.S.C. § 1105(a) for knowingly participating in and undertaking to conceal breaches of other fiduciaries with regards to the Plans' continued investment in Avaya stock.

The Plaintiff is seeking damages, in the form of payments to the Plans to make good the losses resulting from the alleged breaches of fiduciary duty, as well as seeking injunctive and other equitable relief, attorney's fees, costs, and interest.


## II. DISCUSSION

The Defendants have moved to dismiss the claims against them under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Defendants' Rule 12(b)(1) motion challenges the Plaintiff's standing to sue under ERISA on the grounds that she is not now, nor has ever been, a participant in either the Management or Variable Plan. The Rule 12(b)(6) motion challenges the sufficiency of the Plaintiff's Complaint to set forth a legally cognizable claim against the Defendants for breach of fiduciary duty under ERISA. Because the Court finds sufficient cause to dismiss the Plaintiff's claims under Rule 12(b)(6), the Court need not address the issue of whether or not the

Plaintiff properly has standing under ERISA to bring suit on behalf of all three Plans.[3]

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must presume that all allegations in the Complaint be taken as true and viewed in the light most favorable to the complainant.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).  Resolution of these motions in no way indicates a predisposition by the Court on an issue of contested facts. FED. R. CIV PROC. 12(b)(6).  Where, as here, the Complaint at issue attaches or its claims are expressly linked to various documents, the Court is not limited to reviewing the allegations set forth in the body of the Complaint in deciding a motion to dismiss.  The Court may properly consider these additional materials as well, without the need to convert the motion into one for summary judgment.  See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (holding court may look to materials outside the complaint in deciding a 12(b)(6) motion where the claims in the complaint "are expressly linked to - and admittedly dependent upon - a document");  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The basis for the Plaintiff's Complaint is the Employee Retirement Income Security Act

---

[3] Because standing is a threshold jurisdictional issue, the Court would normally address this issue before any arguments on the merits of the Plaintiff's claims.  See Miller v. Rite Aid Corp., 334 F.3d 335, 340 - 41 n.2 (3d Cir. 2003).  In the present case, however, the Defendants concede that the Plaintiff has standing to bring suit as an ERISA fiduciary on behalf of at least one of the Plans at issue, so a favorable ruling on these grounds would not result in dismissal of the case and the Court would still need to address the merits regardless of the Court's finding on the standing issue.  Because the Court finds sufficient grounds to dismiss the Plaintiff's claims on the merits, it need not proceed to address the issues of standing raised in the Defendants' Rule 12(b)(1) motion.

of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.*, that governs employee benefit plans.  "ERISA protects employee pensions and benefit plans by, among other things, 'setting forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans.'"  In re WorldCom, Inc. ERISA Litigation, 263 F.Supp.2d 745, 757-58 (S.D.N.Y. 2003) (quoting Varity Corp. v. Howe, 516 U.S. 489, 496 (1996)).  As a threshold matter for holding a party liable for a breach of fiduciary duty under ERISA, that party must first be an ERISA fiduciary.  ERISA contains a statutory definition of a fiduciary, providing that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Under ERISA, fiduciaries are defined "in functional terms of control and authority over the plan."  Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993).  The "threshold question" in an action charging breach of fiduciary duty under ERISA is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint."  Pegram v. Herdrich, 530 U.S. 211, 226 (2000).  The Defendants do not contest the Plaintiff's allegations that "[e]ach and every defendant was a[n ERISA] fiduciary and acted in a fiduciary capacity during the Class Period with respect to the Plans."  (Compl. at 27, ¶ 66.)  The basis for the Defendants' Motion to Dismiss is that the Plaintiff, in their Complaint, "has not stated, and cannot state, a proper claim" for breach of any fiduciary duty under ERISA.  (Def. Br. at 3.)

**A.**    **The Plaintiff's Complaint Fails to State a Claim for Breach of Fiduciary Duty of Prudence Under ERISA for Maintaining the Plans' Investments in Avaya Stock During the Class Period**.

Under the governing documents, all three of the Plans include, as an investment option for Plan Participants, the Avaya Stock Fund.  (See Def. Br. at Ex. 6, ¶ 5.3 (Union Plan); Id. at Ex. 7, ¶ 5.3 (Variable Plan); Id. at Ex. 8, ¶ 5.3 (Management Plan)).  The Fund invests in shares of Avaya common stock, with a small portion in cash or other liquid investments, as needed to allow the Fund to buy or sell stock at the direction of Plan Participants.  (Id.)  The Plaintiff claims that the Defendants breached their duty of care under ERISA by continuing to offer Avaya stock as an investment option for Plan Participants, and by purchasing and retaining Avaya stock as part of the Plans' investment portfolio, when they "knew or should have known that Company stock was an imprudent investment for the Plans."  (Compl. at 32, ¶ 85.)

Programs, like the Fund, which encourage employee ownership of their employer's stock are recognized as furthering an independent and compelling Congressional objective.  See Moench v. Robertson, 62 F.3d 553, 568 (3d Cir. 1995) ("the concept of employee ownership constitute[s] a goal in and of itself"); Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1097 (9th Cir. 2004) (recognizing Congressional goal to support employee investment in their employer's stock).  The Fund, as an Eligible Individual Account Plan ("EIAP") is also granted special treatment under ERISA which exempts it from any specific statutory diversification requirements.  See 29 U.S.C. 1104(a)(2) (noting that prudence by diversification requirements are not violated by "acquisition or holding of qualifying employer securities).

Under Third Circuit law, Employee Stock Ownership Plans ("ESOPs") are entitled to

9

judicial deference for their decisions to invest assets in the stock of the sponsoring company.  See Moench, 62 F.3d at 571.  Because ESOPs require investment in a given company's stock, they act like "a trust, where the trustee is directed to invest the assets primarily in the stock of a single company."  Id.  Under the deferential standard from Moench v. Robertson, as a general rule, fiduciaries of such ESOPs "'should not be subject to breach-of-duty liability for investing plan assets in the manner and for the purposes that Congress intended."  Id. (quoting Martin v. Feilen, 965 F.2d 660, 670 (8th Cir. 1992)).  Despite this general rule, however, fiduciaries of these funds, are still required to "'exercise care, skill, and caution in making decisions to acquire or retain the investment.'"  Id. (quoting Restatement (Third) of Trusts § 228, cmt. (f)).

The Plaintiff argues that the discretionary standard from Moench should not apply here because the Avaya Plans are not ESOPs.  Unlike an ESOP, whose primary goal is to encourage employee investment in an employer's stock, the Avaya Plans had a primary purpose of helping employees save for retirement.  (Pl. Br. at 18.)  Indeed, the Third Circuit has held that not all employee stock ownership plans are entitled to the deferential Moench standard of review, even for decisions to invest plan funds in the sponsoring employer's securities.  In In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231 (3d Cir. 2005), the Third Circuit held that the Moench standard is "inapposite" to employer-sponsored retirement plans where the company is "'simply permitted to make . . . investments' in 'employer securities.'"  In re Schering-Plough Corp., 420 F.3d at 238, n.5 (quoting Moench, 62 F.3d at 571).

Unlike the plan at issue in Schering-Plough, however, the Avaya Plans all *require* that the Avaya Stock Fund be offered as one of the investment options of the Plans.  The governing documents for each of the three Plans mandate that "Investment Options *shall* include the Avaya

10

Stock Fund, which *shall* be invested primarily in Avaya common stock."[4] (Def. Br. at Ex. 6, ¶ 5.3 (Union Plan); Id. at Ex. 7, ¶ 5.3 (Variable Plan); Id. at Ex. 8, ¶ 5.3 (Management Plan)).  Where EIAPs, like the Avaya Plans, require the investment of plan funds in employer securities, just as required by an ESOP, "it would seem appropriate to give the same deference in either case to fiduciary decisions that conform to the demands of the plan."  In re Honeywell International ERISA Litig., 2004 WL 324591, *11 n.15 (D.N.J. June 14, 2004).  Accordingly, this Court finds that the abuse of discretion standard from Moench is directly applicable to the Defendants' decisions to continue offering and maintaining investments from the Plans in Avaya stock throughout the Class Period.

To overcome the presumption from Moench, that the Defendants' continued investment of the Fund's assets in Avaya stock was consistent with their fiduciary duties under ERISA, the Plaintiff would need to demonstrate that the Defendants abused their discretion by making these investments.  Id.  The sole incident offered by the Plaintiff to rebut the presumption that continued investment in Avaya securities complied with the Defendants' ERISA duties is that the stock underwent a precipitous fall of over 25% the day following the Company's April 19, 2005 announcement.  This, however, is insufficient to constitute a breach of fiduciary duty by the

---

[4] While the terms of the Fund state that funds shall be "invested primarily in Avaya common stock, with a small portion in cash or other liquid investments" (Def. Br. at Ex. 6, ¶ 5.3 (Union Plan); Id. at Ex. 7, ¶ 5.3 (Variable Plan); Id. at Ex. 8, ¶ 5.3 (Management Plan)) this does not make the investments in Company stock discretionary.  Allowances to invest a portion of the Fund's investments in cash or other liquid instruments allows the Fund to accomplish its purpose of clearing transactions as requested by Plan Participants in a timely manner, rather than offering a discretionary investment alternative to the Fund's administrators to act as a hedge against the performance of the Company's stock.  See, e.g., DeFelice v. US Airways, Inc., 397 F.Supp.2d 735, 745 (E.D. Va. 2005) (rejecting argument to impose discretionary authority upon a plan trustee because plan granted authority to maintain liquid reserve funds).

Defendants.  "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the <u>Moench</u> presumption."  <u>Wright v. Oregon Metallurgical Corp.</u>, 360 F.3d 1090, 1099 (9th Cir. 2004) (citing <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1459-60 (6th Cir. 1995)).  The Plaintiff is arguing, in hindsight, that the Defendants should have divested the Plans of their Avaya stock holdings prior to the April 17, 2005 announcement that the Company missed a single quarter's financial targets.

The <u>Moench</u> standard does not require fiduciaries to diversify their EIAP holdings before or after each major corporate development, "it merely requires fiduciaries to act reasonably." <u>Wright</u>, 360 F.3d at 1099.  The allegations in the Plaintiff's Complaint simply do "not present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing" which could call into serious question the fiduciary propriety of continued investment in the Company's securities.  <u>Wright</u>, 360 F.3d at 1098.   The Plaintiff cannot, therefore, sustain their claim that the Defendants breached their fiduciary duty of prudence by maintaining the Plans' investments in Company stock solely on the basis of this single incident.  Accordingly, these claims are dismissed.


**B.     The Plaintiff's Complaint Fails to State a Claim That the Defendants Breached Their Fiduciary Duty Under ERISA by Providing Materially False Information to Plan Participants or Other Fiduciaries During the Class Period Regarding the Company's Financial State**.

To support her claim that the Defendants were actively misleading the investment community and the Plan Participants with regards to the propriety of investing in Avaya stock

during the Class Period, the Plaintiff offers quotations from numerous press releases and other

filings made by the Company during the Class Period, including:

- A Company press release dated October 5, 2004, announcing Avaya's acquisition of Tenovis, a European provider of communications systems and services, where the Company stated that "the acquisition is expected to be accretive by $0.07 per share in fiscal 2006, the first full year of combined results" and that the acquisition was "expected to be dilutive by $0.03 per share in fiscal year 2005." (Compl. at 15-16, ¶ 48.)  The release included a quote by McGuire, the Company's Chief Financial Officer, that "Tenovis is expected to have a positive financial impact within a short period of time, and we [(the Company)] will continue to maintain our financial strength and flexibility."  (Id. at 16, ¶ 48.)

- A Company press release on October 26, 2004 announcing the fourth quarter and fiscal 2004 results, where Peterson, the Company's Chairman, was quoted as saying that "[t]he U.S. continues to lead the transition to IP telephony and in the fourth quarter, we [(the Company)] had double-digit product growth in this key market, both sequentially and compared to last year."  (Id. at 16, ¶ 49.)  This release also included a statement that, after the acquisition of Tenovis is completed, the Company expected "its European revenues would nearly triple" and, when fully integrated, "Avaya expects Tenovis to add about one billion dollars to [the Company's] annual revenues."  (Id.)

- A Company press release on October 29, 2004, setting forth the Company's financial forecasts for fiscal year 2005 and 2006.  In this release, the Company set

13

an operating margin goal for FY 2005 of "between 8.5 and 9 percent" on revenues that were expected to grow "by between 25 to 27 percent compared to fiscal year 2004." (Compl. at 17-18, ¶ 50.)

- A Company press release on January 25, 2005, announcing the Company's first quarter results for FY 2005. The Company announced that its first quarter FY 2005 revenues increased 18% over first quarter FY 2004, and revenues grew "at double-digit rates in all regions except the United States where sales were essentially unchanged verses the year ago period." (Compl. at 18, ¶ 52.) The release also included a quote from Peterson that the Company was continuing to "improve our profitability with operating income rising 70 percent year-over-year" and that the "first quarter results position us to meet our goals for the year." (Id.)

On April 19, 2005, however, the Plaintiff claims that "the truth [was] begin[ning] to emerge," with the Company's announcement that they would miss their second quarter and annual financial targets for fiscal 2005. (Compl. at 20.) In this announcement, the Company noted three factors that affected their overall performance for the quarter: (1) that the implementation of the Company's 'go-to-market' model in the United States has caused some disruption in U.S. sales; (2) the impact of the Tenovis integration; and (3) there were early signs of potential softness in the U.S. technology market. (Compl. at 21, ¶ 55.) The Plaintiff's position is that, in light of the April 2005 announcement, each of these prior statements made by the Company were "materially false and misleading when made because [the D]efendants failed to disclose or misrepresented" these three adverse factors, "which were known to [the

14

D]efendants, or recklessly disregarded by them."  (Compl. at 20, ¶ 54.)  These alleged misstatements or omissions prior to the April 2005 announcement "creat[ed] an unrealistically positive assessment of Avaya and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated" leading up to the April 2005 decline in the stock's value.  (Compl. at 23, ¶ 60.)

As ERISA fiduciaries of the Plans, the Defendants "may not knowingly present false information regarding a plan investment option to plan participants.  There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock."  In re WorldCom, Inc., 263 F.Supp.2d at 766.  See also Martinez v. Schlumberger, Ltd., 338 F.3d 407, 425 (5th Cir. 2003) ("When an ERISA plan administrator speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak truthfully");  Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir.1994) (same).  ERISA imposes a "legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.  The scope of that duty to disclose is governed by ERISA's Section 404(a), and is defined by what a reasonable fiduciary, exercising 'care, skill, prudence and diligence,' would believe to be in the best interest of the beneficiary to disclose."  Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1182 (3d Cir. 1996).  See also Bins v. Exxon Co. U.S.A., 189 F.3d 929, 939 (1999) ("We believe that once an ERISA fiduciary has material information relevant to a plan participant or beneficiary, it must provide that information whether or not it is asked a question."), on rehearing en banc, 220 F.3d 1042, 1048-49 (9th Cir.2000) (when a proposed change in retirement benefits becomes sufficiently likely and therefore material, the employer has

15

a duty to provide complete and truthful information); <u>Schmidt v. Sheet Metal Workers' Nat. Pension Fund</u>, 128 F.3d 541, 546-47 (7th Cir.1997) ("A plan fiduciary may violate its duties . . . either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be misleading."), <u>cert. denied</u>, 523 U.S. 1073 (1998).  "[The] duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." <u>Bixler v. Central Pa. Teamsters Health-Welfare Fund</u>, 12 F.3d 1292, 1300 (3d Cir.1993).  <u>See also</u> <u>In re Williams Companies ERISA Litigation</u>, 271 F.Supp.2d 1328, 1343 (N.D.Oka. 2003) (holding when defendants are "charged with the fiduciary responsibility to tend to the Plan's investments" that duty encompasses a "duty to provide useful and accurate information to Plan participants, to identify sound investment options.").

These various public statements, forecasts, and filings to the Plans' Participants and others noted in the Plaintiff's Complaint, are alleged to have "actively mislead the participants and beneficiaries of the Plans about the appropriateness of investing in Company stock and about Avaya's earnings prospects and business condition[s], thereby encouraging participants and beneficiaries of the Plans to continue to make and to maintain substantial investments in Company stock in the Plans."  (Compl. at 28, ¶ 67.)  These positive statements and forecasts made prior to the April 2005 announcement are contrasted with the April 2005 announcement that the Company missed its financial projections for the second quarter and would miss the overall financial projections for the 2005 fiscal year.  This dichotomy of the Company enthusiastically promoting its revenue and earnings growth and putting forth ambitious growth

16

forecasts prior to the April 2005 announcement while, in April 2005, announcing that it faced

market factors that rendered them unable to achieve its projected growth for the fiscal year is not,

however, sufficient to support the Plaintiff's allegations that the Company's prior public

communications were *de facto* "materially false and misleading." (Compl. at 20, ¶ 54.)  See In re

RCN Litigation, 2006 WL 753149, *11 (D.N.J. March 21, 2006).

      The Plaintiff's Complaint offers nothing more than a hindsight view of the Company's

prior statements to support a conclusory allegation that these prior statements were inaccurate

and misleading at the time they were made.   It is well established that, in deciding a motion to

dismiss, the Court need not "credit a [C]omplaint's 'bald assertions' or 'legal conclusions.'"  In

re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997) (quoting

Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir.1996)).[5]  See also CHARLES ALAN

---

[5] Note that, while the Burlington court was applying FED. CIV. P. 9(b), which requires
that claims of fraud be pled with particularity, the caselaw cited by the Burlington court supports
the tenet that such "'bald assertions' or 'legal conclusions'" also fail the lower threshold of FED.
R. CIV. P. 12(b)(6).  Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir. 1996).  As the
Glassman court noted:

> A complaint must contain "factual allegations, either direct or inferential, respecting
> each element necessary to sustain recovery under some actionable legal theory."
> Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1998); see also Fleming v.
> Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir.1990); cf. Dewey v. University of
> New Hampshire, 694 F.2d 1, 3 (1st Cir.1982) ("it is not enough to allege a general
> scenario which could be dominated by unpleaded facts"), cert. denied, 461 U.S. 944
> (1983); cf. also Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); Coyne v.
> City of Somerville, 972 F.2d 440, 444 (1st Cir.1992);  Correa-Martinez v.
> Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir.1990).  "In deciding a motion to dismiss
> under Rule 12(b)(6), [we] must take all well-pleaded facts as true, but [we] need not
> credit a complaint's 'bald assertions' or legal conclusions." Shaw, 82 F.3d at 1216
> (citations omitted).

Glassman, 90 F.3d at 628.  See also Morse v. Lower Merion School Dist., 132 F.3d 902, 908 (3d
Cir. 1997) (noting that, for 12(b)(6) motions, a court "need not accept 'bald assertions' or 'legal
conclusions' contained in the complaint") (quoting Burlington, 114 F.3d at 1429-30 (citations

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations" ). The Plaintiff's Complaint lacks any assertions that the Defendants possessed information contrary to these public statements at the time they were made prior to the April 2005 announcement, nor does the Complaint demonstrate how these public statements were, in any way, false or misleading at the time they were made.  The Complaint merely offers the conclusion that the three adverse factors cited to in the Company's April 2005 announcement as reasons for missing their quarterly financial target "were known to [the] Defendants, or recklessly disregarded by them, at all relevant times."  (Compl. at 20, ¶ 54.)  Such a conclusory allegation, "fails even the liberal standard of Federal Rule of Civil Procedure 12(b)(6)." Crowley v. Corning, Inc., 234 F.Supp.2d 222, 230 (W.D.N.Y. 2002) (citing De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996)).  Accordingly, the Plaintiff's claims that the Defendants breached their fiduciary duty by providing false or misleading information regarding the Company's financial state are appropriately dismissed.

**C.      The Plaintiff's Complaint Fails to State a Claim for Breach of Fiduciary Duty Under**

---

omitted));  Crowley v. Corning Inc., 234 F.Supp.2d 222, 230-31 (W.D.N.Y. 2002) (general claims of breach of fiduciary duty for disclosing misleading information or failure to disclose material information to ERISA participants fails under 12(b)(6) where allegations fail to specify when adverse information was available or known to defendants or what adverse information was allegedly known to them).  Because the sweeping allegations in the Plaintiff's Complaint fail to meet the lower threshold of FED. R. CIV. P. 12(b)(6), the Court need not decide whether the higher standard of FED. R. CIV. P. 9(b) is applicable to these claims.

**ERISA for Failure to Disclose or Act Upon Material Non-Public Information**

**Regarding the Company's Financial State.**

Even assuming, *arguendo*, that the Defendants had knowledge prior to the April 2005 announcement that the Company was going to miss its financial targets for the second quarter and for the 2005 fiscal year, the Plaintiff's claim that the Defendants' failure to act on such insider information by either publicly divulging it to Plan Participants in advance or divesting the Plans' of Avaya securities prior to any public disclosure does not state a claim for a breach of fiduciary duty under ERISA. Had the Defendants publicly released any adverse information they had prior to the April 2005 announcement, under the "efficient capital markets hypothesis," such a disclosure would have resulted in a swift market adjustment, and the Plans would not have been able to sell their Avaya stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred when the Company publicly announced the quarterly results in April 2005. See In re McKesson HBOC, Inc. ERISA Litigation, 2002 WL 31431588 at *6 (N.D.Cal. Sept. 30, 2002) (citing Crocker v. FDIC, 826 F.2d 347, 350-51 (5th Cir. 1987).

If, on the other hand, the Defendants proceeded to divest the Plans of their holdings in Avaya stock prior to any public disclosure of the allegedly adverse information, the Defendants would be in violation of federal securities laws that prohibit insider trading. See Securities Exchange Act of 1934, §§ 10(b), 21D(b), as amended, 15 U.S.C. §§ 78j(b), 78u-4(b); 17 C.F.R. § 240.10b-5. See also Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1000 (9th Cir. 2002) ("As they pertain to insider trading, Section 10(b), Rule 10b-5, Section 14(e) and Rule 14e-3 make it illegal in some circumstances for those possessing inside information about a company to

trade in that company's securities unless they first disclose the information."); SEC Release No. 33-6188, Employee Benefit Plans, at 1980 WL 29482 at *28 (Feb. 1, 1980) (noting that securities transactions by ERISA Plans are subject to registration and antifraud provisions of the Securities Act). "Not even a fiduciary acting in its fiduciary capacity is permitted to engage in insider trading." McKesson, 2002 WL 31431588 at *6 ("Fiduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties.") (citing In the Matter of Cady, Roberts & Co., 40 S.E.C. 907, 1691 (Nov. 8, 1961)). See also Hull v. Policy Management Systems Corp., 2001 WL 1836286, *9 (D.S.C. Feb. 9, 2001) (holding no breach of fiduciary duty for failing to act on 'insider' information); RESTATEMENT (SECOND) TRUSTS § 166, cmt. a (the trustee is not under a duty to the beneficiary to do an act which is criminal or tortious). Accordingly, the Plaintiff's Complaint fails to state an actionable breach of fiduciary duty under ERISA by alleging that the Defendants failed to disclose or act upon non-public, insider information.

**D.      The Plaintiff's Complaint Fails to State a Claim for Breach of Fiduciary Duty of Loyalty.**

In Count I, the Plaintiff also alleges that the Defendants breached their duty of loyalty to "always administer a plan with an 'eye single' to the interests of the participants and beneficiaries." (Compl. at 28, ¶ 69.) The Plaintiff alleges that the Defendants breached their duty of loyalty by "continuing to allow Company stock as an investment in the Plans during the Class Period, [and] by failing to engage independent fiduciaries who could make independent judgments concerning the Plans' investment in Company stock." (Id. at 28-29, ¶ 70.) Administering a fund investing in Company stock, as part of a company-administered ERISA

plan, requires the employer-administer to "wear two hats" and to administer the company stock

"investments consistent with the provisions of both a specific employee benefits plan and

ERISA." Moench, 62 F.3d at 569. As the Moench Court noted:

> [A]s the financial state of the company deteriorates, ESOP fiduciaries who double
> as directors of the corporation often begin to serve two masters. And the more
> uncertain the loyalties of the fiduciary, the less discretion it has to act. Indeed,
> "'[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he
> make a careful and impartial investigation of all investment decisions.'" Martin v.
> Feilen, 965 F.2d 660, 670 (8th Cir. 1992) (citation omitted). As the Feilen court
> stated in the context of a closely held corporation:
>
>> [T]his case graphically illustrates the risk of liability that ESOP
>> fiduciaries bear when they act with dual loyalties without obtaining
>> the impartial guidance of a disinterested outside advisor to the plan.
>> Because the potential for disloyal self-dealing and the risk to the
>> beneficiaries from undiversified investing are inherently great when
>> insiders act for a closely held corporation's ESOP, courts should look
>> closely at whether the fiduciaries investigated alternative actions and
>> relied on outside advisors before implementing a challenged
>> transaction.
>
> Id. at 670-71. And, if the fiduciary cannot show that he or she impartially investigated
> the options, courts should be willing to find an abuse of discretion.

Moench, 62 F.3d at 572. The inherent risk of dual loyalties for corporate directors and

employees who also serve as administrators for their company's stock ownership plans is to be

taken into account as a factor in applying judicial scrutiny to an administrator's decision with

regard to their management of ERISA funds. This is not, however, a separate and distinct

ERISA duty. This is merely a restatement of the Plaintiff's other allegations - namely that the

Defendants breached their fiduciary duty under ERISA to the Plan's participants by failing to

manage the Plans in the best interests of the Plans' participants. For the reasons noted above,

however, this Plaintiff's Complaint fails to set forth a legally cognizable claim for such a breach

of duty under ERISA, so this claim is also properly dismissed.

**E.      The Plaintiff's Complaint Fails to State a Claim for Breach of Fiduciary Duty to Monitor the Plans' Other Fiduciaries.**

Count III of the Plaintiff's Complaint generally alleges that all the Defendants breached their duty to monitor other fiduciaries of the Plans.  (Compl. at 37.)  While the Complaint does not specify the source of each Defendant's fiduciary duty to monitor other fiduciaries, such a duty is imposed as an implicit duty upon those who have the power to appoint and remove other fiduciaries.  See In re RCN Litigation, 2006 WL 753149, *9 (D.N.J. Mar. 21, 2006).  See also Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465 (4th Cir.1996) (noting that the power to appoint fiduciaries is itself a fiduciary function); Leigh v. Engle, 727 F.2d 113, 133-35 (7th Cir. 1984) (implicit in the power to appoint and remove fiduciaries is the duty to monitor); 29 C.F.R. § 2509.75-8, FR-17.  "The duty to monitor carries with it . . . the duty to take action upon discovery that the appointed fiduciaries are not performing properly." Liss v. Smith, 991 F.Supp. 278, 311 (S.D.N.Y.1998).  Because, however, the Plaintiff's Complaint fails to state a claim for breach of fiduciary duty by any of the Plans' fiduciaries, the Plaintiff's claims for failing to adequately monitor these fiduciaries must also be dismissed.

**F.      The Plaintiff's Complaint Fails to State a Claim for Breach of Co-Fiduciary Liability.**

Section 405(a) of ERISA recognizes that a fiduciary may be liable for breaches of duty committed by other fiduciaries:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).  Count IV of the Plaintiffs' Complaint tracks the language of the statute by generally alleging that all the Defendants in this case were liable as co-fiduciaries by violating all three scenarios of co-fiduciary liability under § 1105(a).  (Compl. at 41-42, ¶ 119.)  The claim of co-fiduciary liability, however, must co-exist with some breach by a fiduciary of their duties under ERISA.  For the reasons noted above, however, the Plaintiff's Complaint fails to set forth an adequate claim that *any* of the fiduciaries breached their duties under ERISA with regards to administration of the Plans.  Accordingly, the Plaintiff's claims under § 1105(a) for co-fiduciary liability cannot be sustained either.

### III.   CONCLUSION

For the reasons stated above, and for good cause shown, the Court **GRANTS** the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  An appropriate form of order will be filed herewith.

Date:   April 24, 2006

s/Stanley R. Chesler

Stanley R. Chesler, U.S.D.J.